IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRICK DECARL CURRY, | § § | |
| *Petitioner*, | § § | |
| v. | § § | Civil Action No. H-09-0379 |
| RICK THALER, | § § § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Larrick Decarl Curry, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state court conviction. Respondent filed a motion for summary judgment (Docket Entry No. 19), to which petitioner responded. (Docket Entry No. 33.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case for the reasons that follow.

### I. PROCEDURAL BACKGROUND

Following the trial court's denial of his motion to suppress, petitioner pleaded guilty to possession of cocaine with intent to deliver. The trial court found "true" to two enhancement paragraphs and sentenced petitioner to forty-six years imprisonment. The conviction was affirmed on appeal. *Curry v. State*, 228 S.W.3d 292 (Tex. App. – Waco

2007, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's application for state habeas relief without a written order on findings of the trial court without a hearing. *Ex parte Curry*, Application No. 71,169-01, at cover.

Petitioner raises the following grounds for federal habeas relief:

> (1) trial counsel was ineffective in failing to object to the fundamentally defective indictment;[1] and
>
> (2) his confrontation rights were denied by the trial court's denial of his motion to suppress.

Respondent argues that these claims are without merit.

## II. FACTUAL BACKGROUND

The state court of appeals set forth the following statement of facts in its opinion:

> On February 19, 2006, the Brazos Valley Narcotics Task Force arrested an individual who identified himself as Eugene Ali. He agreed to cooperate with the Task Force to arrange the purchase of crack cocaine at a motel. Detective Chad Hanks and other law enforcement officers stationed themselves in the motel room next to Ali's and watched video surveillance of his room. Sergeant Darby was in a room across the parking lot from Ali's room so that he could observe vehicle traffic in the parking lot.
>
> At approximately 7:35 p.m. Curry arrived at the motel in a green Chrysler. He exited the car but left the headlights on and the engine running. The officers in the next room observed him on the video enter Ali's room and walk toward the bathroom. Ali and Curry talked for a few minutes then they exchanged what appeared to be crack cocaine and money. Once the officers saw the exchange, they entered Ali's room and arrested Curry.

---

[1] Petitioner expressly waived his claim challenging the indictment as fundamentally defective. (Docket Entry No. 33, p. 4.)

> Following the arrest, Ali gave Hanks 1.11 grams of crack cocaine. Hanks testified that he searched Ali before Curry arrived and he did not have any drugs in his possession. A search of Curry produced two cell phones and approximately $1,600, including the money provided to Ali by the Task Force. Officers then searched the car and found six crack cocaine rocks in the right cup holder, one rock under the driver's seat, and four crack cocaine cookies in the console. The total weight of crack cocaine in the car was approximately 65 grams.

*Curry v. State*, 228 S.W.3d at 294.

### III. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusory allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000). The Supreme Court recognizes that facts must be viewed in the light most favorable to the nonmoving party at the summary judgment stage only if there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Further, this petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in state court and based on a factual determination will not be overturned on factual grounds unless it is objectively

unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Miller-El*, 537 U.S. 330-31; 28 U.S.C. § 2254(e)(1).

## IV. DENIAL OF CONFRONTATION RIGHTS

Citing *Crawford v. Washington*, 541 U.S. 36 (2004), petitioner complains that the trial court violated his confrontation rights at the suppression hearing by allowing into evidence a videotape of the drug transaction between himself and the confidential informant.

The record shows that defense counsel raised the following objections to admission of the videotape at the suppression hearing:

    STATE:    At this time State would offer [the videotape].

    DEFENSE:    I'm going to make a Crawford v. Washington Oaks [sic] because this tape was prepared for prosecution. It's intended to be used as evidence. It was gathered specifically by the police at their direction, and I'm unable to cross-examine the only other person on the videotape besides [petitioner]. That deprives me of my Sixth Amendment right to confront and cross-examine.

    COURT:    Okay. Well, I need to take a look at the video to determine whether or not it is testimonial in nature or merely evidentiary in nature. As I understand it, your objection goes to your inability to cross-examine the confidential informant who is pictured?

    DEFENSE:    Correct.

> COURT: So at issue is going to be the statements that are made during the videotape by [the informant.]
>
> DEFENSE: Not only the statements that are made; but the reason I asked questions about the portions of the room that are not visible, especially portions of the room where [the informant] went to following them busting in the door – if they didn't search his shoes, it's conceivable he could have pulled crack out of his shoes and put it in his pocket during the commotion that was happening. That realistically could have happened.
>
> I think I should be allowed to cross-examine [him] on those issues and other issues that don't necessarily have to deal with what he said on the videotape but what may not be visible on the videotape. Him not being visible, not being present, that's what deprives me of my right to confront and cross-examine.
>
> COURT: All right. For the purposes of this hearing only I'll admit [the exhibit].

Reporter's Record ("R.R."), Vol. 2, pp. 34-36.

In rejecting this claim on direct appeal, the state court of appeals agreed that the confrontation clause applied to petitioner's pretrial suppression hearing, but found that admission of the videotape itself did not violate *Crawford*:

> Curry's third issue argues that the trial court erred in admitting testimonial statements contained in the video surveillance tape in violation of his Sixth Amendment right to confrontation. The State argues that . . . the statements on the videotape were not testimonial within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004).
>
> \* \* \* \*
>
> In *Crawford v. Washington*, the Supreme Court of the United States essentially resuscitated the Confrontation Clause, and held that the admission of hearsay violates a defendant's Sixth Amendment right of confrontation unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. Since *Crawford*, appellate courts have

6

increasingly been called upon to determine how and when to apply the Confrontation Clause. But, '[t]he text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.' *Crawford*, 541 U.S. at 54. The right of confrontation has not been limited solely to that portion of a criminal proceeding that determines guilt or innocence. It has been applied to other portions of a criminal proceeding that can be classified as the trial.

\* \* \* \*

Whether a court's admission of evidence violates the Confrontation Clause is reviewed *de novo*. Testimonial statements made by witnesses absent from trial are admissible only when the declarant is unavailable and only where the defendant has had a prior opportunity to cross examine.

Accordingly, the threshold question under *Crawford* is whether a statement is testimonial in nature. The right of confrontation applies only to witnesses against the accused, defined as 'those who bear testimony.' The right further applies only to 'testimony,' defined as a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' The right is not avoided simply by admitting the evidence under an exception to the hearsay rules.

Although the Supreme Court did not provide a comprehensive definition of the phrase 'testimonial statement,' it indicated that a core class of testimonial' statements exists: (1) *ex parte* in-court testimony or its functional equivalent, such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, (2) extrajudicial statements of the same nature contained in formalized testimonial materials, and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

In determining whether statements are testimonial, Texas courts have looked to the degree of formality of a declarant's interaction with police, the purpose and structure of police questioning and the likelihood that the declarant expects that the statements could be used in a criminal prosecution. Testimonial statements involve a declarant's knowing responses to structured

> questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings.
>
> The statements at issue here are those made during the brief conversation between Ali and Curry in the course of a drug transaction. This setting is not one which would lead an objective witness reasonably to believe that the statement would be available for later judicial proceedings. Further, Ali was speaking about events as they were happening and not as the result of 'structured questioning' about past events. Based on these circumstances, we hold that Ali's statements were not testimonial.

*Curry*, 228 S.W.3d at 296-299 (citations, footnotes, and internal quotation marks omitted).

Assuming, without holding, that *Crawford* applied to petitioner's pretrial suppression motion, no grounds for federal habeas relief are shown, as the conversational statements were non-testimonial in nature. In *Crawford*, the Supreme Court held that the confrontation clause guarantees a defendant's right to confront those who "bear testimony" against him, and described the class of testimonial statements covered by the right of confrontation:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-51 (citations and internal quotation marks omitted). The Court further held that "testimony" is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact. *Id.*, at 51.

8

Petitioner complains that, because the surveillance videotape contained portions of his conversation with the confidential informant, it fell within the parameters of a "testimonial statement" in violation of his confrontation rights. He argues that the confidential informant's conversation was testimonial in nature because it was "structured" by police officers to lure the petitioner into participating in an illegal drug sale and because the confidential informant knew the statements would be used to obtain petitioner's conviction. (Docket Entry No. 33, pp. 2-3.) Petitioner does not complain of any particular statement made by the informant, but rather, globally objects to the admission of the audio portion of the informant's conversation.

The state appellate court found that the audio portion of the videotaped conversation between petitioner and the informant was non-testimonial in nature:

> The statements at issue here are those made during the brief conversation between [the informant] and Curry in the course of a drug transaction. This setting is not one which 'would lead an objective witness reasonably to believe that the statement would be available' for later judicial proceedings. Further, [the informant] was speaking about events as they were happening and not as the result of 'structured questioning' about past events. Based on these circumstances, we hold that [the informant's] statements were not testimonial.

*Curry*, 228 S.W.3d at 299. Having carefully reviewed the videotape, this Court agrees with that finding. The exchange between the informant and petitioner during the drug transaction was conversational in nature and circumstances; it was not the structured questioning and answering that occurred in *Crawford*. 541 U.S. at 53, n. 4. Nor can it be said that, had an

9

objective individual observed the drug exchange, the individual would have reasonably believed that the participants' conversation would be available for later judicial proceedings.

At the suppression hearing, the State verified that the informant was not available for trial. R.R., Vol. 2, p. 56. The trial court reviewed the relevant facts of *Crawford*, then ruled that the videotape would be allowed into evidence:

> Michael Crawford was involved in a stabbing incident in Washington State at which his wife was present. Both Michael and his wife were interviewed by the police relating to that stabbing of – I think the victim's name was Lee, if I remember right. At the trial of the case he was charged with assault and attempted murder. Because of state law in Washington, his wife was not allowed to testify against him due to a privilege; but under state law in Washington, the audiotape of the interrogation of her was admissible and was admitted at the trial.
>
> Critical issue in the trial was the issue of self-defense. Michael Crawford asserted self-defense in the altercation and stabbing. The testimony of his wife during the interrogation by police directly contradicted that; and that was the only testimony that was admitted during the trial on the issue of self-defense that favored the State, as I recall – or at least that was the critical issue that they talked about in the cases. So her testimony in the interrogation was what made or break – made or broke that case. That was testimony. And the denial of the defendant's ability to cross-examine her relating to her statements made to the police is what resulted in the reversal of that case.
>
> [The informant's] statements on the tape [here] have nothing to do with possession with the intent to deliver that I can see. The officer has testified that he searched the room and searched the – [the informant's] person, and the officer is subject to cross-examination concerning that. Anything that's on this tape from – coming from [the informant] really I can't see has any indication of testimony that would be subject to cross-examination. The events that are occurring off camera are simply unknown, but I don't see that that would invoke the testimonial requirements of Crawford.

> So I'm going to, as far as the admissibility of the video and audio, overrule the motion. On the admissibility of the drugs in the car I'll overrule that as well because I believe there's sufficient probable cause for them to enter that vehicle under those circumstances at that time.

*Id.*, pp. 56-57.

Even assuming error by the trial court, a violation of the confrontation clause is subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986); *see also Arizona v. Fulmiante*, 499 U.S. 279, 306-07 (1991). This Court determines whether an erroneous admission of the informant's statements was harmless beyond a reasonable doubt by using the following factors: (1) the importance of the statements to the State's case; (2) whether the statements were cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the informant's statements on material points; and (4) the overall strength of the State's case. *Van Arsdall*, 475 U.S. at 684. Under *Brecht v. Abrahamson*, the Court may grant federal habeas relief only if a constitutional error had a substantial and injurious effect or influence in determining the outcome of the case. 507 U.S. 619, 623 (1993).

A thorough review of the trial record in the instant case fails to show that petitioner was harmed by any erroneous admission of the informant's portion of the videotaped conversation. As testified by the police detectives at the hearing, and as evinced by the videotape itself, the video portion of the surveillance tape shows an exchange of money from the informant to petitioner and a transfer of a substance from petitioner to the

11

informant. R.R. Vol. 2, p. 13. The "buy" money received by petitioner was shown to be the same paper bills as given to the informant by police prior to the drug transaction. *Id.*, p. 41. The substance received by the informant from petitioner was shown to be cocaine. *Id.*, p. 38. The police detectives testified at the hearing that they watched the drug transaction through a live-feed closed-video surveillance camera, as follows:

> We saw the subject walk in. He walked towards the – to the bathroom and turned around. He was on the phone the entire time. He and the [informant] must have conversed for a second because he was on the phone the entire time. The subject handed the [informant] what we suspected to be crack cocaine and the [informant] handed him the money and this all happened. Once we observed what we thought to be a narcotics transaction, based on our experience and training – at that time we exited the room and entered the informant's room and made the arrest.

*Id.*, p. 13. As it was not necessary to rely on or refer to the audio portion of the videotape to establish the drug transaction, its admission into evidence at the suppression hearing was harmless.

Petitioner fails to show that the state court's denial of relief was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court, or was an unreasonable determination of the facts based on the evidence in the record. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on this issue.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner complains that trial counsel failed to object that the enhancement paragraphs of the indictment were not in chronological order, and failed to object when the State was allowed to amend the indictment to present the paragraphs in chronological order. In denying habeas relief, the state trial court expressly found as follows:

> As to applicant's claim of ineffective assistance, Applicant fails to show deficient performance, much less harm, in his allegation that his counsel did not challenge the sequential language contained in the indictment.

*Ex parte Curry*, p. 46.

The record shows that, on May 4, 2006, petitioner was indicted for knowingly possessing, with intent to deliver, a controlled substance, namely cocaine, in an amount of four grams or more but less than 200 grams.[2] The indictment alleged a drug conviction dated April 6, 2001, as the first enhancement, and a drug conviction dated September 25, 1998, as the second enhancement.

The State moved to amend the indictment on May 4, 2006, requesting that the enhancement paragraphs be amended (reversed) to read as follows:

> Enhancement to Habitual: and it is further presented in and to said Court that, prior to the commission of the aforesaid offense (hereafter styled the primary offense), on the 25th day of September, 1998 in Cause Number 26,337-85 in the 85th District Court of Brazos County, Texas, the defendant was convicted of the felony offense of Delivery of a Controlled Substance PG 1 Less One Gram, and it is further presented in and to said Court that, prior to the commission of the primary offense, and after the conviction in Cause Number

---

[2]Other counts alleged in the original indictment were deleted on May 16, 2006.

> 26,337-85 was final, the defendant committed the felony offense of Possession of a Controlled Substance PG 1 1-4 Grams and was convicted on the 6th day of April, 2001, in Cause Number 28,327-85 in the 85th District Court of Brazos County, Texas[.]

Clerk's Record ("C.R.") at 3-4. In other words, the amended indictment alleged the 1998 conviction as the first enhancement and the 2001 conviction as the second enhancement, reversing the order in which they were originally pleaded.

On a date unclear in the record, trial counsel filed a motion to quash the indictment, arguing as follows:

> The indictment attempts to increase the punishment in the case by alleging two prior felony convictions which occurred prior to the commission of the offense, pursuant to Penal Code Sec. 12.42(d) to a term of imprisonment of life or not more than 99 years or less than 25 years. However, *the indictment lists the prior convictions in an improper and/or incorrect order* which fails to invoke Penal Code Sec. 12.42(d). At least one of the prior convictions listed in the indictment is surplusage and can only serve to inflame the jury, and, therefore, fails to give the Defendant precise notice of the offense charged as to enable him to adequately prepare his defense and is insufficient to bar subsequent prosecution.

C.R. at 34 (emphasis added). The motion to quash was denied on May 12, 2006. *Id.*, at 35. Neither the trial court's blank docket (C.R. at 64) nor the State's motion to amend shows that the motion to amend the indictment was granted. However, at the May 17, 2006, punishment hearing following petitioner's guilty plea, the State read the indictment into the record in its amended format, without objection. R. R., Vol. 3, p. 6. At the hearing, the trial court stated that,

> I guess the first issue I need to address is the determination of the enhancement paragraphs. The pleading requirements for enhancement paragraphs are much different than they are for the offense itself. The case law is very clear that you don't even have to plead in the indictment enhancement paragraphs. But you do have to give notice of intent to use prior convictions which in this case the State made a pleading error in the indictment as far as the sequence goes; but that was covered by the notice that was delivered an adequate period of time before the trial in the case.
>
> So I think that the notice to the defendant is sufficient under all the circumstances to put the defendant on notice that the State was intending to treat this as a habitual felony for the purposes of punishment and gave him the adequate notice to know which particular offenses that he was going to use.

*Id.*, pp. 69-70.

As correctly argued by the respondent in the instant motion for summary judgment, trial counsel received the notice required by state law, and neither deficient performance nor prejudice are shown in the record.

The state habeas courts denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## VI.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 19) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH**

**PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 10th day of December, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE